UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SYLVIO MAURICE,
Petitioner,
v.
MARKWAYNE MULLIN, Secretary of Homeland Security; *et al.*,
Respondents.

Case No.: 26-cv-5286-BJC-JLB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

On September 14, 2026, Petitioner Sylvio Maurice filed a Petition for Writ of Habeas Corpus ("Petition"). ECF No. 1. On October 5, 2026, the Court issued a briefing schedule. ECF No. 3. Respondents responded to the Petition on October 13, 2026. ECF No. 6. Petitioner filed a Traverse on October 15, 2026. ECF No. 7 For the reasons set forth below, the Court **GRANTS** the Petition (ECF No. 1) and **ORDERS** Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Haiti. ECF No. 1-2 at ¶ 19. Petitioner, seeking asylum, entered the United States on April 13, 2024, and was released by the United States Customs and Border Protection on parole. *Id.* ¶ 3. Petitioner subsequently submitted his asylum application to the United States Citizenship and Immigration Service. *Id.*

Petitioner states that he "faithfully attended each and every immigration related appointment he was required to attend." *Id.* at ¶ 3.

On August 13, 2026, Petitioner was apprehended and taken into custody while on his way to work. *Id.* ¶ 19. Petitioner alleges that the government has not identified any materially changed circumstances which justify the revocation of his previous release from DHS custody. *Id.* ¶ 47, 58. Further, Petitioner alleges that Respondents have made no finding that Petitioner is a danger to the community. *Id.* ¶ 55. Nor have Respondents made a finding that Petitioner is a flight risk. *Id.* ¶ 56. Petitioner has remained in custody since August 13, 2026. *Id.* ¶ 19.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

## III. DISCUSSION

### A. Jurisdiction

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." Although Respondents urge this Court to endorse a broad reading of this statute (*see* ECF No. 6 at 2–4), the Ninth Circuit has made clear that § 1252(g) must be read narrowly as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action'

to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (emphasis in original) (citation omitted). Simply put, Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at 997; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citation omitted). Challenges to unconstitutional practices and policies, including due process violations, that do not arise from the Attorney General's three permitted actions are, therefore, not subject to Section 1252(g). *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

Here, Petitioner's "objective [is] *not* to obtain judicial review of the merits of their [removal] proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052 (emphasis added); *see also* ECF No. 7 at 1–2 (Petitioner "is not challenging the government's decision to begin removal proceedings, he is challenging the legality if his detention."). Such claims fall squarely within the Court's habeas authority. *Id.*; *see also Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

Accordingly, the Court concludes it has jurisdiction over Petitioner's claim. *Id.*; *see, e.g.*, *Komarov v. LaRose*, 2026 WL 2296992, at *1–2 (S.D. Cal. Aug. 10, 2026) (rejecting jurisdictional argument because due process challenges are not subject to 1252(g)); *Bertrand v. LaRose*, 2026 WL 2280642, at *2 (S.D. Cal. Aug. 6, 2026) (rejecting jurisdictional argument where due process challenges were "nonetheless independent of, the removal proceedings").

**B. Due Process**

Petitioner argues that the summary revocation of her parole without notice or a hearing violates the Due Process Clause. ECF No. 1-2 ¶¶ 6–9, 40–47. The Court agrees.

Respondents do not explicitly address Petitioner's due process argument. Instead, Respondents assert that because Petitioner's parole had expired at the time of his re-detention, and he was served with a Notice to Appear that terminated his parole status, he was therefore subject to mandatory detention under 8 U.S.C. § 1225.[1] *See* ECF No. 5 at 4–6. This argument is unpersuasive.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.") (citation omitted). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process proceedings generally "require[] some kind of hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225, Petitioner is subject to mandatory detention and therefore his alleged statutory and constitutional violations fail. ECF No. 6 at 4–6. The Court disagrees. Other decisions

---

[1] Petitioner was served with the Notice to Appear when he entered the United States on April 13, 2024, nearly two years before his re-detention. ECF No. 6-1 at 2.

from this district have previously held that, while a noncitizen may not be deemed admitted in the United States pursuant to § 1182(d)(5)(A), the noncitizen is not necessarily subject to mandatory detention, depending on the length of time they have been in the country. *See, e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (finding petitioner who was granted humanitarian parole under § 1182(d)(5)(A) "is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal.").

Here, Petitioner was granted humanitarian parole upon entry into the United States. ECF No. 1-2 ¶¶ 3–4; *see also* ECF No. 6 at 4–5. Petitioner is not a newly arrived noncitizen seeking admission at the border. On the contrary, Petitioner has been in the United States since April 2024. ECF No. 1-2 ¶ 3. Further, Respondents' contention—without explanation—that *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), is "inapplicable to Petitioner," is dubious at best. *See* ECF No. 6 at 5–6; *see also Rodriguez Vasquez*, 183 F.4th at 1165 ("[A]liens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); *id.* at 1172 ("[W]e conclude that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States.").

Regardless, even if Petitioner could be subject to mandatory detention under § 1225, that would not resolve the instant Petition as "many courts in the Ninth Circuit have held that the expiration of parole does not extinguish a petitioner's entitlement to due process." *Aliyev v. LaRose*, 2026 WL 699818, at *2 (S.D. Cal. Mar. 12, 2026) (collecting cases). In other words, a petitioner's private interest does not expire along with their parole agreement. *See, e.g.*, *Nayem v. LaRose*, 2026 WL 915023, at *3 (S.D. Cal. Apr. 3, 2026); *Tunaca-Galindo v. Att'y Gen. of United States*, 2026 WL 1229587, at *2 (S.D. Cal. May 5, 2026); *see also Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025)

("[P]etitioner's liberty interest did not expire along with his parole."). The expiration of one's parole "does not somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." *L.M. v. Noem*, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See id.* Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining out of custody and continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."). Moreover, the nearly two years Petitioner spent on conditional release creates a substantial interest for Petitioner in his continued liberty. *Maria S.M. v. Chestnut*, No. 1:26-CV-03777-TLN-AC, 2026 WL

1480390, at *3 (E.D. Cal. May 27, 2026) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.")).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. ECF No. 7 at 5–6. DHS initially determined that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, and there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). In the years following his release, Petitioner timely filed his asylum application, applied for and was granted work authorization—with which has been working hard and supporting himself—and has established other extensive community ties in the United States. ECF No. 7 at 4–5. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. Respondents, failing to address Petitioner's Due Process argument in their Response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole. *See generally* ECF No. 6. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Alvarenga Matute v. Wofford*,

807 F. Supp. 3d 1120, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* ECF No. 5.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention. He received neither. Thus, the Court finds Respondents violated Petitioner's due process rights.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus. ECF No. 1.

Accordingly, the Court **ORDERS** as follows:

1. Respondents must immediately release Petitioner from custody, subject to the same terms and conditions on which he was previously released in April 2024.

2. Respondents are **ENJOINED AND RESTRAINED** from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show materially changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. *See Maria S.M.*, 2026 WL 1480390, at *4.

///

///

3. As this concludes the litigation in this case, the Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED**.

Dated: October 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge